Case 13-5288, U.S.A. v. Darnell Mitchell, Oral Argument, 15 minutes per side. Mr. Bell for the appellant. Go ahead. Thank you, Your Honor. May it please the Court. My name is David Bell and I represent Darnell Mitchell in this appeal from the Western District of Tennessee. I would like to reserve three minutes for rebuttal. Sure. Your Honors, this is a case that involves the Armed Career Criminal Act and the Tennessee Statute of Simple Robbery, which criminalizes the intentional or knowing theft of property from the person of another by violence or putting the person in fear. Now, that statute has come before this Court several times in the past and has been considered by this Court, and we stand before the Court today for the determination as to whether Mr. Mitchell, in having a prior conviction that violated that statute, qualifies as an armed career criminal. This Court should find that Mr. Mitchell does not qualify as an armed career criminal for three reasons. First, pursuant to the United States Supreme Court decision in DeKalb, which came out fairly recently, the Tennessee Simple Robbery Statute is indivisible and overbroad and does not qualify as a violent felony under the Armed Career Criminal Act. Second, if this Court were to find that that statute is divisible, then Mr. Mitchell's 1988 juvenile conviction for simple robbery does not qualify because it was not shown that Mr. Mitchell used or carried a firearm, knife, or explosive device. Third, if divisible... Was that a juvenile conviction or was that a conviction by a juvenile in an adult court? That looked like it was an adult conviction, right? Well, Your Honor, the analysis is still the same in terms of whether or not it qualifies as a juvenile, as this Court said in the past, while he may have been taken to adult court. And if Your Honor will note from the district court below, the decision was made that it was the use of the knife involved that made it a qualifying conviction, not any sort of status as an adult or anything else. That's one of the reasons why it comes so far into play. Of course, 924E, the Armed Career Criminal Act statute, states that in order for a juvenile to have violated the statute, there has to be, the very specific wording is, use of a knife, firearm, or destructive device. And in that case, if you recall... You just said he had a knife. Well, no, Your Honor. That is what the district court said. We disagree with that. And the reason why is that the statute, the simple robbery statute, only required that a person be put in fear or that a person in some way use violence. And that was an or, right? So the district court used the modified categorical approach, went behind that to try to decide whether that prior offense, the 1998, excuse me, 1988, let me be clear, conviction, whether that qualified. And what the court did is, of course, the burden is on the government to establish the elements of any qualifying conviction under the Armed Career Criminal Act. That's been established by this court. For some time, it was established in Goodman. Back in 2008, as well, it was reestablished. But what happened is the government provided the plea colloquy. And in the plea colloquy, the court reviewed the plea colloquy in which Mr. Mitchell never admitted to having a knife, never admitted to using a knife. And instead, what was stated in the plea colloquy, which is all referenced in the briefs and gone over extensively, is that a group of individuals attacked a man. At least one of them used a knife. And then the man later on identified Mr. Mitchell as one of the ones that robbed him, but not as one of the ones who stabbed him. You can aid and abet a robbery of somebody else, and you're guilty of robbery, right? Well, yes, Your Honor. That's an old criteria. But the difference is, Your Honor, the Armed Career Criminal Act, under 924E, is very stringent in its requirements. In order for a juvenile to apply, it has to be that the juvenile has the use, let me read the words again, use of a knife, firearm, or destructive device. So this juvenile conviction does not necessarily involve him using a knife, a firearm, or destructive device. It doesn't say him using. It says the use. The use of. Well, if you're an accessory or whatever, as Judge Seiler was saying, to somebody who is using it, why doesn't that offense, the accessory offense, involve the use because you're helping somebody use? That's part of the problem with this statute. There's a lot of problems out there. Yes, Your Honor, there are. As this court has said. It's a Rorschach test. You're right, and that's what the court said in Fraker. That's what the court said in Johnson just this past year in 2013 when it reaffirmed the decision in Fraker and analyzed it. But we have to apply the thing. It's here and it says it's intelligible. Well, it's very interesting when you look at this court's consideration of the robbery statute. The decision in Fraker decided by Judges Boggs, Cole, and Sutton came back and said that the robbery statute at issue here involves criminal activity outside the scope of the Armed Career Criminal Act because a defendant can violate the statute by employing only fear rather than physical violence or force. Has that been kind of criteria for robbery for years? You could say, if you don't give me your money, I'll shoot you. What about that? Is that fear you're saying that that would come under the Armed Career Criminal Act? Well, to be honest, this court has said that before. This court has said in Fraker, in Johnson, that because this can be violated just by fear, then it does not necessarily involve violence and it falls outside of the Armed Career Criminal Act. To find otherwise would be to overrule those decisions. Well, I mean, they're unpublished, so we wouldn't have to do that necessarily. Well, Fraker did not address the residual clause, which is what the government's focusing on here, the catch-all provision. So, I mean, for whatever reason, maybe the government didn't make the argument there. But Fraker doesn't seem to have much to say about the issue, the argument that the government is making today. Well, Your Honor, I think that's interesting that the government makes that argument and says that Fraker did not address the residual clause. If the Fraker court and the Johnson court reinterpreting and then going and reading the dissent in the Banks case, from Judge Martin, that is directly on point as well. But what those courts say is that this Tennessee crime of robbery involves conduct that falls within the Armed Career Criminal Act and conduct that falls outside of the Armed Career Criminal Act. So saying that the Fraker court didn't consider the residual clause would basically be nullifying the words of the court there. Well, let me put it this way. I mean, unpublished opinions are persuasive authority, not binding authority. And it seems to me that Fraker does not have reason. You cited a conclusion. Fraker does not have reasoning in support of that conclusion with respect to the residual clause. Is that fair? I'm not saying it means you're wrong, but Fraker just doesn't have reasoning about the residual clause. And I'm certainly not one to quarrel with you, Judge. Well, I mean, you know it better than I do, frankly. So if I'm missing something, I want you to tell me. Well, I think that the problem that what happened in Fraker was that the judge got to the modified categorical approach because, to be frank, with my first argument, DeCamp hadn't come out yet. But that being said, going back in time, got to the modified categorical approach because the modified categorical approach would help to instruct them as to what the actual plea was to. And the reason why they got to that modified categorical approach was that was sort of the steps you went through. Of course, the residual clause comes last in that sort of analysis. And I think that's probably part of this court's problem is that if the court had gone one step further and said, now let's go ahead and speak about the residual clause, it would have made it a lot easier. But when a court says that there is conduct encompassed in this statute that involves armed career criminal act conduct and non-armed career criminal act conduct, and they're very specific, it's the fear element, the simple use of fear. No, I agree with what you're saying. Then we have to, this court needs to take those words at heart that the court has gone through the analysis of the armed career criminal act and the residual clause under the past decisions. But that being said, under the residual clause, this simply is not a crime of violence. The way that if the court decides that this is a divisible statute, and we haven't talked about that yet, but we can if Your Honor would want, but on this line, when you're talking about the residual clause, the analysis is, is there a way that this statute can be violated that just automatically causes there to be some sort of, every single time it gets violated, that there must at its very root be a danger of violence. So I'm with you. At this point in the analysis, are we doing a categorical approach or a modified, or does it matter? Well, that's the thing, Your Honor. If you get to that point where you're talking about the residual clause, I would argue that the residual clause, based on the prior decisions, doesn't even come into play. But if you go through the residual clause, then yes, you would be going through the modified categorical. Still the modified. Well, I really, to be quite honest with you, and this is the difficulty of arguing this case after DeCamp came out so recently. When you consider DeCamp and the case that really came out very recently from this court, the Covington decision, which I assume that Your Honors are familiar with, it just came out on the 6th of January. So it's just come out very recently. You cited that? No, Your Honor, to be honest, it just came out the 6th of January of this year. So it's in the letter, of course. Yes, Your Honor, and I will be happy to send another letter. It's just, to be honest with you, it just came out, and we're trying to see whether it even applied. But I don't even need to use Covington, to be honest, Your Honor. I can go back to DeCamp and the way that DeCamp applies. DeCamp was a decision by the United States Supreme Court. There was one dissenter, which is extremely rare, we know, these days, especially in these armed career criminal cases. And what Justice Kagan said in that decision was that when you're looking at a statute that is not your typical, what you want to call generic statute, in that it falls in the generic elements of the monopenal code, the court has to look at whether it's divisible or indivisible. That is, whether it can be broken up or whether it stays together. And what DeCamp said, what the court said in DeCamp, is that only divisible statutes enable a sentencing court, that's the district court, to conclude that a jury or a judge in a plea hearing has convicted the defendant of every element of the generic crime. Now, the problem that occurs, and that was... Only indivisible statutes can get treated that way? No, only divisible statutes enable a sentencing court to conclude that a jury has convicted the defendant of every element of the generic crime. Indivisible statutes never even get to the modified categorical approach. And the thing that DeCamp did is that it brought back into focus that in Shepard and Taylor, the focus of the court had to be on the elements of the statute, not on facts behind the conviction. Okay. Well, you'll have your rebuttal, certainly. Thank you. Let's see what the government has to say. Your Honor, good morning. May it please the court. My name is Daniel French. I'm representing the United States in this matter. I share the court's exhaustion with the Armed Career Criminal Act because at this point we're now arguing whether the felony offense of robbery is a violent felony under the act. Our argument is very simple. We don't have to get to the modified categorical approach. We don't have to get to DeCamp's. We don't have to get to all this stuff that counsel's been talking about. The simple issue before the court is whether or not robbery is categorically, in all instances, a violent felony under the residual clause. That is our sole argument this morning. That's what we're relying on. You say that's a threshold issue, and if it comes out your way, then we don't need to get into modified. That's absolutely correct. Absolutely correct. And we don't have to get to the modified categorical approach. The process as the Supreme Court has laid out is, I don't want to use the word simple, but of course the threshold issue is whether it's categorically a violent felony under either the use of force prong, and then if it's not, then we move to the residual clause. And of course robbery would apply under the residual clause because it's ultimately a felony that involves property, just like burglary. Of course you are taking this property from a person, but it is a felony offense involving property, just like burglary is. And so there's really three cases that the government relies on in its brief that all the court needs to consider, and that is James v. United States, that's Sykes v. United States, and that is also the McKeedy Act decision that this court had. It's also an unpublished decision like Fraker. And all three of those decisions support the government's argument in this case. And James, of course the Supreme Court in 2007 looked at attempted burglary and tried to determine whether or not it was a categorically a violent felony under the residual clause. And the court came to the conclusion that it was. It said that attempted burglary qualifies because there is a possibility of confrontation between the offender and the victim. And it said we don't need to get into all these hypotheticals. You know, defense counsel is talking about, or I'm sorry, appellate counsel is talking about, you know, well, we need to look at in all these circumstances whether it could be committed without violence or with violence. We don't have to get into that. We're talking about the categorical approach. We're talking about whether robbery is roughly similar in kind as well as in degree of the risk posed by the enumerated offenses under the residual clause. And the closest one, obviously, is burglary. And our argument in this case is robbery presents an even more potential risk of serious injury than burglary does because you're always going to be taking property from the person. Burglary, there's only the risk that you're going to encounter the person inside the home. There's the possibility. In the robbery context under Tennessee law, you're always taking the property from the person of another. Well, the defendant has suggested Fraker and Johnson say to the contrary. Is that correct? That's not correct, Your Honor. The defense in both its initial brief and reply brief completely misconstrued Fraker and Vakediak. And Fraker, and I'm not familiar with Johnson. I don't remember the defense citing to that in their brief. But in the Fraker case, which they primarily rely on, I don't know why the court didn't get to the residual clause. I think Judge Kethledge brought that up. I don't know if the government just didn't make that argument. That would usually be the reason. I'm assuming that's it, and I don't know why they didn't. But in Fraker, the only part of ACCA that is addressed is the use or attempted use of physical force as an element. And the court quickly dispenses with that because they considered the chance that you could commit this by fear that that didn't require physical force. Well, I mean, Mr. Bell is correct, though, when he says the court's description of the statute is sweeping and does say it includes conduct not within the scope of the ACCA. Well, that's under the as an element test. The court's been dealing with that some recently in Castleman and other decisions, whether use or attempted use of physical force, what that means when you say it's as an element of the offense. Is that the same as the categorical test? It is the same as the categorical test. And that's the test that you're wanting us to apply? Well, I want you to apply the categorical test to the residual clause. So when we get to the residual clause, we're not asking whether robbery requires use or attempted use of physical force. Now we're asking if robbery in all instances, in the ordinary case, like James says, whether in all instances it poses a roughly similar in kind as well as in degree of the risk posed by the enumerated offenses such as burglary. And James says that attempted burglary is always a violent felony categorically under the residual clause because there is a possibility of confrontation. In robbery, there's always going to be a confrontation. And I'll even note that in Tennessee, even if robbery is committed by fear, the courts in Tennessee have said that fear is fear of present personal peril from violence or impending violence. So we're talking about the situation that Judge Seiler brought up, which is if you commit robbery by fear, it's fear that I'm going to shoot you, I'm going to hurt you. And so it's always going to pose a risk. And in fact, in Sloan v. State, which we cite in our brief, the Tennessee Criminal Court of Appeal went and said that robbery by fear is to intimidate and frighten the victims and to non-resistance fear of death and bodily harm. So again, we're talking about a situation in which you're taking from a person and the serious potential risk posed in all instances under the residual clause for robbery are the same for attempted burglary. And McKedy Act picked up on that. In the McKedy Act decision, the court correctly outlined the process. It applied the categorical approach. It never got to the modified. It didn't need to. And it said categorically robbery under Michigan law was a violent felony under the residual clause. And McKedy Act got to that. In fact, the robbery statute in Michigan is similar to Tennessee's in that it can be committed by fear and violence or putting a person in fear and then it adds the third of assault. But the court said in McKedy Act, robbery, quote, presents a greater risk of violent confrontation than burglary because it always occurs in the victim's presence and the offender may be prepared to use violence if necessary to carry out his plans. And we also note, of course, in our brief, that robbery under the U.S. sentencing guidelines is defined as a crime of violence. It's listed as one of the enumerated offenses under 4B1.2a. Of course, the court applies the same analysis for purposes of the sentencing guidelines in that section as it does for ACCA. I do want to move on to the act of juvenile delinquency, which I want to address just briefly. This argument was never made at the district court level, that the 1988 robbery conviction was an act of juvenile delinquency, and I don't think that argument was made because it flies in the face of the case that, one case that the defense even relies on, which is USB Banks, which we also cite in our brief. And in Banks, the same argument was made. The argument was, well, the defendant was 17 when he committed this adult offense and was convicted of this adult offense, and thus it was a juvenile delinquency requiring this proof of use of a firearm or knife or whatnot. And Banks went on to say that if it's an adult conviction, there is no need to get into this issue of proof of use or carrying of a firearm, knife, or destructive device at all because it's an adult conviction. And so in this case, of course, plain error would apply. The defense has offered no proof that this was not an adult conviction. In fact, as Judge Seiler picked up on and as we made in our brief or cited in our brief, this was in Shelby County Criminal Court. He received an adult sentence of eight years. They're not even contesting that it's an adult conviction. They're just trying to say, well, he was 17, and we ought to look at the reasons why it was removed to adult court. I'm not aware of any case law that supports that argument. I would submit that Banks, in fact, is in direct contradiction to that argument. The district court didn't really get a chance to analyze that issue. They didn't analyze it at all, Your Honor. I mean, this argument wasn't made at all, and we filed it. They filed an extensive position paper challenging his status under ACCA, and we filed a response to that, and I think they filed a reply, and then we had this big hearing at the sentencing, and we discussed it at length. This argument was never made at the district court level. It's being raised for the first time on appeal. So the court had no opportunity to address that at all. The United States had no opportunity to present any proof as to that, and the defense is conceding it's an adult conviction, so I submit that the issue was really – I'm not sure why it's being raised at this point. But unless the court has any additional questions about our positional violent felony, I concede the rest of my time.  Thank you, Your Honor. Is it true that it wasn't raised by your side in the district court? We talked about, if I may answer your question. A juvenile conviction, so-called? Need a light. Your Honor, I believe what was raised was it was raised that it was a juvenile offense, but not whether it was a juvenile versus adult conviction. That issue was never brought up at the district court level. It was never brought up by either side, to be frank with you. That's a plain error review on that one. Well, I'll let the court decide that, but I disagree that that's the only issue when it comes to the 1988 conviction. If Your Honor does not find that this statute is indivisible and goes through the elements of the modified categorical approach, whether this court decides it based on the fact that it's a juvenile conviction or whether this court decides it based on the fact that in finding that – in reviewing what the plea colloquy is, where no one ever really admits to anything, and in fact the facts that are brought out is that a group was involved in an attack and later on someone stabbed the individual, but it's never identified to be Mr. Mitchell, then that's a situation where, again, you're dealing with the same issue. Was it by force or violence? Was it by fear? What about Mr. French's point that James says attempted burglary is categorically a crime of violence because of the chance of confrontation? Robbery, you have a certainty of confrontation. Why doesn't that decide the case? Well, burglary is a person's home, and there's a difference there. I mean, it's worse for you because it's face-to-face by definition, isn't it? Well, Your Honor, let's consider just for when talking about what the elements are that need to be satisfied here and what was satisfied or at least what the plea colloquy talks about when it comes to the Mitchell conviction. I'm talking about just at the categorical level. I understand. We disagree, Your Honor. If an individual takes an item from a person simply by using fear, there is no requirement that an individual use a particular type of fear. Well, Tennessee apparently says fear of violence or peril of impending bodily harm. That's what some Tennessee cases have said in interpreting the statute. But again, when this court has interpreted the statute, this court has obviously interpreted it differently when deciding that some of these acts are nonviolent. And I think it's interesting that the government simply wants to ignore Fraker altogether. The McKety Act case that he cites to is a case involving a statute from the state of Michigan. And that case came out, just to make sure I have the dates right, that case came out in January of 2013. After the McKety Act case, the Johnson case came out from this court again, which reaffirmed the Fraker decision, which stated that the Fraker decision was on point when analyzing Tennessee aggravated robbery versus plain robbery. And so this court has said time and time again that there's elements of violence and elements of nonviolence. All right. Well, thank you very much for both of your arguments. Well-argued case. The case will be submitted. We're going to take a very short recess. Come back.